**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036-6522
(212) 735-3000

**BANCROFT PLLC**
1919 M. Street NW, Suite 470
Washington, D.C. 20036
(202) 234-0090

Attorneys for Plaintiffs

| | |
|---|---|
| NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, an unincorporated association, NATIONAL BASKETBALL ASSOCIATION, a joint venture, NATIONAL FOOTBALL LEAGUE, an unincorporated association, NATIONAL HOCKEY LEAGUE, an unincorporated association, and OFFICE OF THE COMMISSIONER OF BASEBALL, an unincorporated association doing business as Major League Baseball, | : **UNITED STATES DISTRICT COURT** <br> : **DISTRICT OF NEW JERSEY** <br> : <br> : Civil Action No. _____ <br> : <br> : <br> : **COMPLAINT FOR DECLARATORY** <br> : **AND INJUNCTIVE RELIEF** <br> : <br> : |
| Plaintiffs, | : <br> : |
| v. | : <br> : |
| CHRISTOPHER J. CHRISTIE, Governor of the State of New Jersey, DAVID L. REBUCK, Director of the New Jersey Division of Gaming Enforcement and Assistant Attorney General of the State of New Jersey, and FRANK ZANZUCCKI, Executive Director of the New Jersey Racing Commission, NEW JERSEY THOROUGHBRED HORSEMEN'S ASSOCIATION, INC., and NEW JERSEY SPORTS AND EXPOSITION AUTHORITY, | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |
| Defendants. | : <br> : |

Plaintiffs National Collegiate Athletic Association (the "NCAA"), National Basketball Association (the "NBA"), National Football League (the "NFL"), National Hockey League (the "NHL"), and Office of the Commissioner of Baseball doing business as Major League Baseball ("MLB"), by and through their undersigned counsel for their complaint allege as follows:

## Nature of the Action

1.      This action challenges New Jersey's latest effort—in defiance of this Court's February 28, 2013 Order and in clear and flagrant violation of federal law—to accomplish what it unsuccessfully attempted to do nearly three years ago:  sponsor, operate, advertise, promote, license, or authorize gambling on amateur and professional sports at state-licensed casinos and horse racetracks.  Because this effort is no more lawful than New Jersey's past ones, it, too, should be enjoined.

2.      The federal Professional and Amateur Sports Protection Act, 28 U.S.C. § 3701, *et seq.* ("PASPA"), with limited exceptions not applicable here, makes it unlawful for any "governmental entity to sponsor, operate, advertise, promote, license, or authorize by law or compact" any "lottery, sweepstakes, or other betting, gambling, or wagering scheme based, directly or indirectly (through the use of geographical references or otherwise), on one or more competitive games in which amateur or professional athletes participate, or are intended to participate, or on one or more performances of such athletes in such games."  (28 U.S.C. § 3702.)

3.      For years, New Jersey has been attempting to devise a way to get around these unambiguous prohibitions and authorize sports gambling in Atlantic City casinos and horse racetracks throughout the state.

a.      New Jersey's efforts began in 2012, when it enacted the New

Jersey Sports Wagering Law, N.J. Stat. 5:12A-1, *et seq*. (the "2012 Sports Wagering Law"), an

open and acknowledged effort to authorize sports gambling in Atlantic City casinos and at New

Jersey racetracks.  Plaintiffs successfully challenged that statute as a violation of PASPA and, on

February 28, 2013, this Court permanently enjoined Governor Christie and defendants David L.

Rebuck, director of the New Jersey Division of Gaming Enforcement and assistant attorney

general of the State of New Jersey, and Frank Zanzuccki, executive director of the New Jersey

Racing Commission, from implementing or enforcing it.  (*National Collegiate Athletic Ass'n v.*

*Christie*, 926 F. Supp. 2d 551, 577-79 (D.N.J.), *aff'd*, 730 F.3d 208 (3d Cir. 2013), *cert. denied*,

134 S. Ct. 2866 (2014).)

b.      On June 26, 2014, three days after the United States Supreme

Court denied defendants' petition for certiorari in the *Christie* matter, the New Jersey legislature

passed Senate Bill 2250 ("S2250"), legislation that purported to "repeal" the state's prohibitions

on sports gambling, but to do so *only* at casinos and racetracks, which already are required to

obtain a license to offer any form of gambling and to comply with scores of rules and regulations

to maintain that license.  Governor Christie vetoed that legislation as a transparent attempt to

circumvent this Court's injunction in *Christie* and PASPA's prohibitions.

c.      On September 8, 2014, Governor Christie, through the state's

acting attorney general, issued a directive positing that, notwithstanding the unambiguous terms

of this Court's injunction, the operative provisions of the 2012 Sports Wagering Law—which

provided that the casinos and racetracks "may operate a sports pool"—remained effective as a

"repeal" of previous statutes prohibiting sports wagering, rather than an "authorization" of sports

gambling.  Only after declaring the directive effective immediately did the governor ask this

Court to clarify and/or modify the *Christie* injunction to conform to this dubious theory.

    4.  On October 17, 2014, before this Court could consider the State's last

attempt to circumvent the *Christie* injunction, Governor Christie signed into law Senate Bill

S2460 (the "2014 Sports Wagering Law"), which repealed the 2012 Sports Wagering Law in its

entirety and replaced it with yet another attempt to authorize sports wagering in Atlantic City

casinos and horse racetracks throughout the state.

    5.  While styled as a "repeal," the 2014 Sports Wagering Law is nothing

more than a de facto authorization of sports gambling.  Like its vetoed predecessor, the 2014

Sports Wagering Law "repeals" all existing prohibitions, rules, and regulations that are specific

to sports wagering, but does so *only* at Atlantic City casinos and horse racetracks throughout the

state—in other words, only at venues that are already state-licensed and regulated.

    6.  The bill's own sponsors have readily conceded that the 2014 Sports

Wagering Law is intended to authorize and promote sports betting at casinos and racetracks.  As

Assemblyman Ralph Caputo explained:  "We want to give the racetracks a shot in the arm.  We

want to help Atlantic City.  We want to do something for the gaming business in the state of New

Jersey."  Senator Raymond J. Lesniak—perhaps the most ardent and unrelenting proponent of

authorized sports betting in New Jersey—similarly told reporters that "Sports betting will be a

lifeline to the casinos, putting people to work and generating economic activity in a growth

industry."

    7.  The conclusion that the 2014 Sports Wagering Law is an authorization,

rather than the repeal that it purports to be, also is compelled by the New Jersey Constitution.

Gambling in New Jersey has been legalized very cautiously, and no gambling may be conducted

in the state unless it is permitted by the state's Constitution.  And no gambling is permitted under the state's Constitution unless it has been "authorized" by the Legislature and regulations established.  (N.J. Const. art. IV, § VII, ¶ 2; *In the Matter of Petition of Casino Licensees*, 268 N.J. Super. 469, 472 (App. Div.), *aff'd*, 138 N.J. 1 (1993).)

8. Moreover, no gambling may be conducted in Atlantic City casinos unless that gambling has been specifically authorized by law.  Article IV, Section VII of the New Jersey Constitution unequivocally provides:

> It shall be lawful for the Legislature to authorize by law the establishment and operation, under regulation and control of the State, of gambling houses or casinos within the boundaries, as heretofore established, of the city of Atlantic City, county of Atlantic, and to license and tax such operations and equipment used in connection therewith.  . . .  The type and number of such casinos or gambling houses and of the gambling games which may be conducted in any such establishment shall be determined by or pursuant to the terms of the law authorizing the establishment and operation thereof.

(N.J. Const. art. IV, § VII, ¶ 2D.)  Thus, under the clear provisions of the New Jersey Constitution, the Legislature and the governor are powerless to permit any form of gambling in Atlantic City casinos unless the games are specifically authorized by law.

9. As all of the foregoing confirms, the State's latest attempt to authorize sports gambling is just as unlawful as its previous attempts.  As the bill's practical operation reveals, its sponsors concede, and the New Jersey Constitution demands, the 2014 Sports Wagering Law is a blatant effort to authorize sports gambling at venues that are licensed and regulated by the state.  It therefore violates both PASPA and this Court's injunction, which prohibits the governor and other state officials from "sponsoring, operating, advertising, promoting, licensing, or authorizing a lottery, sweepstakes, or other betting, gambling, or wagering scheme based, directly or indirectly (through the use of geographical references or otherwise), on one or more competitive games in which amateur or professional athletes

- 4 -

participate, or are intended to participate, or on one or more performances of such athletes in such games." (*Christie*, 926 F. Supp. 2d at 577-79.)

10.     Alternatively, if the 2014 Sports Wagering Law really is nothing more than the repeal that it purports to be, then it violates the New Jersey Constitution, which requires any gambling to be specifically *authorized* by the Legislature.

11.     At least one New Jersey racetrack, Monmouth Park Racetrack, a facility operated by defendant New Jersey Thoroughbred Horsemen's Association but owned by defendant New Jersey Sports and Exposition Authority—which, to make matters worse, is a state entity independently prohibited by PASPA from sponsoring, operating, advertising, or promoting sports gambling—has stated its intention to start offering sports gambling pursuant to the 2014 Sports Wagering Law as early as October 26, 2014.

12.     As this Court already has held, the spread of state-sponsored sports gambling in New Jersey would irreparably harm plaintiffs. (*Christie*, 926 F. Supp. 2d at 578.) Indeed, this Court and Third Circuit have recognized that the spread of state-sponsored sports gambling "would engender the very ills that PASPA sought to combat." Accordingly, injunctive relief is imperative to prevent the irreparable injury that will occur should the 2014 Sports Wagering Law take effect and defendants or anyone else begin sponsoring, operating, advertising, promoting, licensing, or authorizing sports gambling pursuant to its terms.

### The Parties

13.     Plaintiff the NCAA is a voluntary unincorporated association of approximately 1,300 members consisting of colleges, universities, conferences, associations, and other educational institutions. Governed by its member institutions, the NCAA's fundamental purpose is to maintain intercollegiate athletics as an integral part of the educational program and

the athlete as an integral part of the student body.  The NCAA's headquarters are located at 700 West Washington Street, Indianapolis, Indiana 46204.

14.     Plaintiff the NBA is a voluntary membership association that operates a professional basketball league consisting of thirty members and their member teams, with its principal place of business located at 645 Fifth Avenue, New York, New York 10022.  The NBA engages in the production and marketing of NBA basketball and operates a professional basketball league in the United States and Canada.

15.     Plaintiff the NFL is an unincorporated association controlled by its thirty-two constituent member clubs.  Originally formed in 1920 as the American Professional Football Conference, the league has been operating under the NFL moniker since 1922.  The NFL's headquarters are located at 345 Park Avenue, New York, New York 10154.

16.     Plaintiff the NHL is an unincorporated association, composed of thirty Member Clubs that are located throughout the United States and Canada.  The NHL League Office headquarters are located at 1185 Avenue of the Americas, New York, New York 10036.

17.     Plaintiff MLB is an unincorporated association whose members are the thirty Major League Baseball Clubs.  MLB, on behalf of its members, has responsibility for administrative and operational matters relating to Major League Baseball.  MLB headquarters are located at 245 Park Avenue, New York, New York 10167.

18.     Defendant Christopher J. Christie is the governor of the State of New Jersey.  Elected to office in November 2009, Governor Christie was sworn into office on January 19, 2010.  Governor Christie was a defendant in *Christie*, and is bound by the permanent injunction entered in that case.

19.     Defendant David L. Rebuck is an assistant attorney general of the State of New Jersey and the current director of the New Jersey Division of Gaming Enforcement ("DGE"), an agency created by N.J. Stat. 5:12-55 that operates as a division of the Department of Law and Public Safety.  The director of the DGE is appointed by the governor with the advice and consent of the New Jersey Senate.  Defendant Rebuck has primary responsibility for overseeing casino operations in New Jersey.  Defendant Rebuck was a defendant in *Christie*, and is bound by the permanent injunction entered in that case.  Defendant Rebuck is responsible for licensing and overseeing casinos within the State of New Jersey, and upon information and belief will license and oversee casinos that operate sports betting pools established under the 2014 Sports Wagering Law if not enjoined.

20.     Defendant Frank Zanzuccki is the executive director of the New Jersey Racing Commission, an agency created by N.J. Stat. 5:5-22 that advocates the growth, development and promotion of the horse racing industry in the state.  The executive director is appointed by the nine commissioners of the New Jersey Racing Commission, each of whom is appointed by the governor with the advice and consent of the New Jersey Senate.  N.J. Stat. 5:5-23, 25.  Defendant Zanzuccki is responsible for licensing and overseeing horse racing tracks within the State of New Jersey, and upon information and belief will license and oversee horse racing tracks that operate sports betting pools established under the 2014 Sports Wagering Law if not enjoined.

21.     Defendant New Jersey Thoroughbred Horsemen's Association, Inc. ("NJTHA") is the licensed operator and permit holder of Monmouth Park Racetrack.  As a racetrack operator and holder of a permit from the State of New Jersey, NJTHA is subject to

regulations of both the New Jersey Racing Commission and the DGE.  NJTHA intervened as a defendant in *Christie*.

22.     Defendant New Jersey Sports and Exposition Authority ("NJSEA") is a "public body corporate and politic" established by New Jersey statute and comprising of, *inter alia*, the New Jersey state treasurer and members appointed by the governor and New Jersey Legislature.  N.J. Stat. 5:10-4.  NJSEA owns, among other venues, Monmouth Park and the Meadowlands.

## Jurisdiction and Venue

23.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367.

24.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## PASPA Prevents States From Sponsoring, Operating, Advertising, Promoting, Licensing, Or Authorizing Sports Gambling

25.     PASPA was enacted on October 28, 1992, and became effective on January 1, 1993, amid growing public concern over the significant harm that would result from the spread of gambling on amateur and professional sporting events in the United States.  With four narrow exceptions not applicable to this case, PASPA makes it unlawful for any "governmental entity to sponsor, operate, advertise, promote, license, or authorize by law or compact"—and any "person to sponsor, operate, advertise, or promote, pursuant to the law or compact of a governmental entity"—any "lottery, sweepstakes, or other betting, gambling, or wagering scheme based, directly or indirectly (through the use of geographical references or otherwise), on one or more competitive games in which amateur or professional athletes participate, or are intended to participate, or on one or more performances of such athletes in such games."  (28 U.S.C. § 3702.)

26.       PASPA explicitly gives amateur and professional sports organizations, like plaintiffs, standing to seek an injunction for any violation of its provisions.  (28 U.S.C. § 3703.)

27.       Under the plain terms of PASPA, New Jersey is expressly barred from sponsoring, operating, advertising, promoting, licensing, or authorizing sports-based gambling, and casinos and racetracks within the state are prohibited from engaging in such activities pursuant to state law.

### All Gambling Within New Jersey Is Prohibited Unless Specifically Permitted By The New Jersey State Constitution

28.       The New Jersey Constitution prohibits any kind of gambling not specifically permitted by that document.  (*In the Matter of Petition of Casino Licensees*, 268 N.J. Super. 469, 472 (App. Div.), *aff'd*, 138 N.J. 1 (1993).)  The New Jersey Constitution provides:

> No gambling of any kind shall be authorized by the Legislature unless the specific kind, restrictions and control thereof have been heretofore submitted to, and authorized by a majority of the votes cast by, the people at a special election or shall hereafter be submitted to, and authorized by a majority of the votes cast thereon by, the legally qualified voters of the State voting at a general election….

(N.J. Const. Art. IV, § VII, ¶ 2.)

29.       The New Jersey Constitution provides certain, narrow exceptions to the foregoing broad prohibition, such as exemptions for state lotteries and charitable contests.  (*See id.*)  Relevant to the instant case, the New Jersey Constitution expressly provides, however, that no type of gambling may be conducted in such Atlantic City casinos or gambling houses unless it has been authorized by the Legislature.  Specifically, the New Jersey Constitution states:

> It shall be lawful for the Legislature to authorize by law the establishment and operation, under regulation and control by the State, of gambling houses or casinos within the boundaries, as heretofore established, of the city of Atlantic City, county of Atlantic, and to license and tax such operations and equipment used in connection therewith . . . **The type and number of such casinos or gambling houses and of the gambling games which may be conducted in any**

- 9 -

**such establishment shall be determined by or pursuant to the terms of the law authorizing the establishment and operation thereof.** It shall also be lawful for the Legislature to authorize by law wagering at casinos or gambling houses in Atlantic City on the results of any professional, college, or amateur sport or athletic event, except that wagering shall not be permitted on a college sport or athletic event that takes place in New Jersey or on a sport or athletic event in which any New Jersey college team participates regardless of where the event takes place.

(N.J. Const., art. IV, § VII, ¶ 2D (emphases added).)

30.     The New Jersey Constitution further permits the Legislature to authorize by law certain forms of gambling at New Jersey racetracks, provided, however, that those activities are "under restrictions and control" of the state:

It shall be lawful for the Legislature to authorize, by law, the specific kind, restrictions and control of wagering on the results of live or simulcast running and harness horse races conducted within or outside of this State . . . It shall also be lawful for the Legislature to authorize by law wagering at current or former running and harness horse racetracks in this State on the results of any professional, college, or amateur sport or athletic event, except that wagering shall not be permitted on a college sport or athletic event that takes place in New Jersey or on a sport or athletic event in which any New Jersey college team participates regardless of where the event takes place.

(N.J. Const., art. IV, § VII, ¶ 2F.)

31.     The New Jersey Constitution, therefore, prohibits any type of gambling, including sports gambling, from being conducted in Atlantic City casinos or New Jersey racetracks unless such gambling is expressly authorized by law and subject to the regulation and control of the State of New Jersey.

**This Court Permanently Enjoined New Jersey From Sponsoring, Operating, Advertising, Promoting, Licensing, Or Authorizing Sports Gambling**

32.     On January 17, 2012, Governor Christie signed the 2012 Sports Wagering Law, N.J. Stat. 5:12A-1, *et seq*., which authorized sports gambling at Atlantic City casinos and New Jersey racetracks upon the approval of the DGE and, for the racetracks, the

- 10 -

New Jersey Racing Commission, and in accordance with applicable regulations promulgated pursuant to the statute.  (N.J. Stat. 5:12A-2.)

33.     On August 7, 2012, plaintiffs filed a complaint in this Court against Governor Christie and defendants Rebuck and Zanzuccki (collectively, the "*Christie* defendants") seeking a declaration that the 2012 Sports Wagering Law violated PASPA insofar as it purported to enable the State of New Jersey and its officials to sponsor, operate, advertise, promote, license, and/or authorize sports betting schemes in New Jersey.  On August 10, 2012, plaintiffs moved for summary judgment.

34.     On February 28, 2013, this Court granted plaintiffs' motion for summary judgment and permanently enjoined the *Christie* defendants from "sponsoring, operating, advertising, promoting, licensing, or authorizing a lottery, sweepstakes, or other betting, gambling, or wagering scheme based, directly or indirectly . . . on one or more competitive games in which amateur or professional athletes participate, or are intended to participate, or on one or more performances of such athletes in such games."  (*Christie*, 926 F. Supp. 2d at 578-79.)

35.     On September 17, 2013, the Third Circuit Court of Appeals affirmed the grant of summary judgment and entry of the permanent injunction.  (730 F.3d 208 (3d Cir. 2013).)  On November 15, 2013, the Third Circuit denied New Jersey's petition for a rehearing *en banc*.  On June 23, 2014, the United States Supreme Court denied defendants' petition for a writ of certiorari.  (134 S. Ct. 2866 (2014).)

### Undeterred, The New Jersey Legislature Passes A Bill To Authorize Sports Wagering In Casinos And Racetracks

36.     In May 2014, before the United States Supreme Court had ruled on the *Christie* defendants' petition for a writ of certiorari, Senator Lesniak announced that he had "legislation being drafted and that will be introduced, to allow casinos and racetracks to have

sports betting on our premises." ("NJ Sen. Lesniak to craft sports betting bill for racetracks, casinos," May 19, 2014 (available at www.northjersey.com/news/nj-sen-lesniak-to-craft-sports-betting-bill-for-racetracks-casinos-1.1019252).) According to Senator Lesniak, notwithstanding the judgment of two federal courts, and any action the Supreme Court may take, "we will push the envelope on sports betting [and] we are not going to be deterred." (*Id.*)

37.     On June 23, 2014, the same day that the Supreme Court denied the *Christie* defendants' certiorari petition, Senator Lesniak and others in the Legislature introduced S2250, a bill designed to achieve precisely the same thing as the 2012 Sports Wagering Law that this Court enjoined—namely, authorize sports gambling at casinos and racetracks. S2250 attempted to do so by "partially repealing" New Jersey's statutory prohibitions *only* as applied to "sports wagering in casinos in Atlantic City and at racetracks across New Jersey." The legislation explicitly stated that it was passed "in response to the decision of the … Third Circuit." Three days later, the Legislature passed S2250 without floor debate or other recorded discussion concerning the bill.

38.     On July 6, 2014, Senator Lesniak explained the purpose of S2250, which was, in essence, the same as the purpose behind the 2012 Sports Wagering Law: "Legalizing sports wagering recognizes the inevitable—that people are going to bet on sports, whether the practice is legal or not, and that we should provide a safe and legal avenue for them to bet on their favorite teams. By mainstreaming sports wagering, we can . . . put it in the regulated hands of existing casino and racetrack operators. And we can create new jobs and new economic opportunities for our ailing gaming establishments." ("Sen. Raymond J. Lesniak / Sports betting fight must continue," July 6, 2014 (available at www.pressofatlanticcity.com/opinion/

commentary/sen-raymond-j-lesniak-sports-betting-fight-must-continue/article_a486fcd0-04fe-11e4-b21e-001a4bcf887a.html).)

       39.     On August 8, 2014, Governor Christie vetoed S2250, describing the bill as a "novel attempt to circumvent the Third Circuit's ruling" by, "[i]n essence, partially deregulat[ing] betting at casinos and racetracks in an attempt to sidestep federal law." ("Inside the Chris Christie New Jersey Sports Betting Veto," August 9, 2014 (available at http://www.4flush.com/casino-news/inside-the-chris-christie-new-jersey-sports-betting-veto/17548).)  Noting that the bill was "rushed to final passage," Governor Christie reiterated that he could not support "[i]gnoring federal law" because "the rule of law is sacrosanct, binding on all Americans." (*Id.*)

### The Governor's Office Acts To Authorize Sports Wagering

       40.     Notwithstanding the Governor's disapproval of the legislature's blatant attempt to circumvent PASPA and this Court's judgment, on September 8, 2014, New Jersey's acting attorney general issued and declared immediately effective a directive to state agencies to stop enforcing existing prohibitions on sports gambling in casinos and racetracks.

       41.     This directive announced the Governor's newly minted and blatantly atextual position that the provisions of the 2012 Sports Wagering Law that expressly stated that permitted casinos and racetracks "may operate a sports pool"—*i.e.*, the provisions that state officials throughout the *Christie* litigation had touted as authorizing sports betting in New Jersey—were, in fact, not an authorization of sports betting at all, but merely a repeal of existing state prohibitions on sports betting at such venues.  As such, the directive declared that the most critical provisions of the 2012 Sports Wagering Law were not invalided by this Court's injunction or the Third Circuit's decision affirming it, but rather "remain in force and effect."

- 13 -

42.     In light of this novel position, the acting attorney general instructed the Division of Criminal Justice and the Department of Law and Public Safety that they should not object to or seek, either criminally or civilly, to enjoin a sports pool operated by a casino or racetrack, provided that such sports pool does not permit wagering on college sporting events that take place in New Jersey or in which any New Jersey college team participates.

43.     The *Christie* defendants did not ask this Court to sanction this end-run around its permanent injunction beforehand.  Instead, they waited until the directive was already issued and declared immediately effective, and only then moved this Court to "clarify" or, alternatively, "modify" its permanent injunction to permit New Jersey's transparent effort to sponsor, operate, advertise, promote, license, and/or authorize sports betting pursuant to the 2012 Sports Wagering Law that this Court had already held preempted by PASPA.

44.     Plaintiffs and the United States Department of Justice filed their opposition to the motion on September 29, 2014.  Before the *Christie* defendants' reply briefs were due, however, on October 17, 2014, Governor Christie signed the 2014 Sports Wagering Law which, among other things, repealed the 2012 Sports Wagering Law.  The *Christie* defendants then withdrew their pending motion for clarification and/or modification of the permanent injunction.

### New Jersey Passes *Another* Bill To Authorize <u>Sports Wagering In Casinos And Racetracks</u>

45.     The 2014 Sports Wagering Law is New Jersey's latest attempt to accomplish exactly what Congress and this Court have already prohibited it from doing: sponsor, operate, advertise, promote, license, and/or authorize sports betting.  The 2014 Sports Wagering Law  does so by purporting to "repeal" prohibitions, rules, and regulations on sports gambling, but doing so *only* at Atlantic City casinos and New Jersey racetracks—in other words,

- 14 -

only at venues that already are required by state law to obtain a license to operate and offer *any* kind of gambling, and subject to a whole host of rules and regulations on the manner in which they may operate.

46.     To that end, in addition to repealing the 2012 Sports Wagering Law, the 2014 Sports Wagering Law purports to repeal any rules and regulations at casinos and racetracks that are *specific* to sports gambling.

47.     What the bill does *not* repeal, however, is the requirement to obtain a license from the state to operate a casino or racetrack, or the scores of rules and regulations with which casinos and racetracks must comply in order to maintain such a license.  *See, e.g.*, N.J. Stat. 5:12-96 (casinos may not conduct gaming or remain open without a valid operation certificate from the state); 5:12-100 (only permitting conduct of "authorized games" in casinos); 5:5-50 (establishing permitting obligations for racetracks);  § 5:5-30 (NJRC has "full power to prescribe rules, regulations and conditions under which all horse races shall be conducted"); 5:5-63 (New Jersey Racing Commission must approve all mutuel boards or machines that display wagering odds); 5:5-67 (recordkeeping requirements for racetracks); 5:12-130 (sanctioning "unlawful acts" by casino licensees); *see generally* N.J.A.C. 13:69-74B (regulations governing casino gambling and horse racetracks).

48.     The 2014 Sports Wagering Law also does not repeal existing prohibitions on sports gambling with respect to "a collegiate sport contest or collegiate athletic event that takes place in New Jersey or . . . in which any New Jersey college team participates regardless of where the event takes place."  This statutory language tracks verbatim the New Jersey Constitution's limitation on the scope of the legislature's power "to authorize by law" sports gambling, thus underscoring that the Legislature itself recognized that it was authorizing

sports gambling when it enacted the 2014 Sports Wagering Law  (N.J. Const., art. IV, § VII, ¶¶ 2D, 2F), as well as the harm it was causing to those whose games would be the subject of the state's wagering scheme.

49.      The 2014 Sports Wagering Law also does not (indeed, could not) repeal the New Jersey Constitution provisions prohibiting all types of gambling—and especially all types of gambling at Atlantic City casinos and New Jersey racetracks—unless they are specifically authorized by law and subject to the regulation and control of the State of New Jersey.  Once again, this underscores that the Legislature understood that it was exercising its power to *authorize* sports gambling, regardless of the window dressing in which it was engaged.

50.      In fact, all of the long-standing state prohibitions against wagering remain in place following the state's fictional "repeal" of its wagering laws.  In addition to the state's Constitutional prohibitions against wagering remaining, all of the state's civil prohibitions against gambling remain intact.  *See, e.g.*, N.J. Stat. 2A:40-1 ("All wagers, bets or stakes made to depend upon any race or game, or upon any gaming by lot or chance, or upon any lot, chance, casualty or unknown or contingent event, shall be unlawful.").  Likewise, all of the State's criminal prohibitions against gambling remain unchanged.  *See, e.g.*, N.J. Stat. 2C:37-2 (prohibiting promotion of gambling).

51.      Thus, the state has hardly "repealed" any of its myriad anti-gambling laws, or even a single part of those laws.  Rather, the state has merely exempted from these laws two narrow groups—state-licensed casinos and state-licensed racetracks—all in a clear effort to authorize and promote sports wagering.

52.      Indeed, the bill's sponsors have made clear that the 2014 Sports Wagering Law is intended to authorize and promote sports wagering in Atlantic City casinos and

New Jersey racetracks.  Senator Lesniak stated that the purpose of the 2014 Sports Wagering Law is the same as that of the 2012 Sports Wagering Law:  "Sports betting will be a lifeline to the casinos, putting people to work and generating economic activity in a growth industry." ("Kyrillos and Lesniak Fast Track Sports Betting Legislation," October 1, 2014 (available at http://www.moremonmouthmusings.net/2014/10/01/kyrillos-and-lesniak-fast-track-sports-betting-legislation/).)  Speaking about the new law prior to the governor's signature, Senator Lesniak said, "We are a short step away from getting this done and a lot closer to bringing sports betting to New Jersey."  ("Sports betting bill heads to Christie's desk after Assembly Approval," October 16, 2014 (available at http://www.njbiz.com/article/20141016/NJBIZ01/141019817/Sports-betting-bill-heads-to-Christie%E2%80%99s-desk-after-Assembly-approval).)  He explained that "[i]t's been a long, tough effort and we've gone up against powerful interests, but now there is an urgency because sports gaming will be a lifeline to the Atlantic City casino industry at a critical time.  It will produce jobs, generate economic activity and be a long-term benefit to New Jersey.  I urge the governor to sign it into law as fast he can."  (*Id.*)

        53.     Assemblyman Ralph Caputo offered a similar rationale for the law:  "We want to give the racetracks a shot in the arm.  We want to help Atlantic City.  We want to do something for the gaming business in the state of New Jersey."  ("Sports leagues continue push against N.J. wagering; lawmaker hones bill to permit it," September 30, 2014 (available at http://www.newsworks.org/index.php/arts-culture/item/73396-college-pro-sports-continues-push-against-nj-wagers).)  "Everyone recognizes the problems of Atlantic City and the racetracks," Assemblyman Caputo said before the law's enactment.  ("Sports betting bill heads to Christie's desk after Assembly Approval" (*see supra* ¶ 52).)  "This would be a tremendous boost and a historic move for the state of New Jersey to permit that kind of activity here."  (*Id.*)

54.     "Sports betting can assist New Jersey's struggling casino industry and with our challenges at Monmouth Park Racetrack," Senator Joseph M. Kyrillos, another of the bill's sponsors, said prior to the governor's signature.  (*Id.*)  "Both houses of the Legislature acted quickly to approve this critical measure and I am confident Governor Christie will join our efforts to help protect Atlantic City and Monmouth Park jobs by signing the bill into law."  (*Id.*)

**State-Owned Monmouth Park Racetrack's Immediate Plans**
**To Commence Sports Wagering Pursuant To The 2014 Sports Wagering Law**

55.     Within hours of Governor Christie's signing of the 2014 Sports Wagering Law, Monmouth Park Racetrack announced that it will "begin offering and accepting wagers on sporting contests and athletic events on Sunday, Oct. 26 at the racetrack." ("Monmouth Park To Start Sports Betting October 26," October 17, 2014 (available at http://www.monmouthpark.com/News.aspx?id=8985).)

56.     Monmouth Park Racetrack is owned by defendant NJSEA, which is a legislatively created "instrumentality of the state exercising public and essential governmental functions."  N.J. Stat. 5:10-4(a).  Revenue derived from the NJSEA "shall be deemed and held to be applied in support of government."  (*Id.*)

57.     Accordingly, any sports wagering at Monmouth Park (or the NJSEA-owned Meadowlands Racetrack) would violate the provisions of PASPA that prohibit a state from directly sponsoring, operating, or advertising sports wagering, regardless of whether those facilities purport to offer gambling pursuant to a state authorization or a state repeal.

## COUNT I
### (Violation of PASPA, 28 U.S.C. § 3702(1))
### <u>(Against Defendants Christie, Rebuck and Zanzuccki)</u>

58.     Plaintiffs repeat and reallege the allegations contained in the foregoing paragraphs as though fully set forth herein.

59.     PASPA prohibits any governmental entity from sponsoring, operating, advertising, promoting, licensing or authorizing sports gambling, sports wagering, or a sports lottery.  (28 U.S.C. § 3702(1).)

60.     Despite its "repeal" language, the 2014 Sports Wagering Law is a blatant attempt by the State of New Jersey to sponsor, operate, advertise, promote, license and/or authorize sports gambling in Atlantic City casinos and at New Jersey racetracks.  As such, the 2014 Sports Wagering Law violates PASPA.

61.     If the 2014 Sports Wagering Law is not declared unlawful and injunctive relief not granted, the proliferation of state-sponsored and approved sports gambling in Atlantic City casinos and at New Jersey racetracks will cause immediate and irreparable harm to plaintiffs.  Indeed, the harm will be precisely the same as the harm this Court already found sufficient to warrant injunctive relief when the same plaintiffs challenged the 2012 Sports Wagering Law.  As the Court already concluded, monetary damages would be inadequate to compensate plaintiffs for the irreparable injuries they will suffer.

## COUNT II
### (Violation of New Jersey Constitution)
### <u>(Against All Defendants)</u>

62.     Plaintiffs repeat and reallege the allegations contained in the foregoing paragraphs as though fully set forth herein.

63.     Under the New Jersey Constitution, no gambling activity may be conducted within an Atlantic City casino or at a New Jersey racetrack unless it is expressly authorized by law.

64.     If the 2014 Sports Wagering Law does not constitute the authorization by law of sports gambling in violation of PASPA, then it violates Article IV, Section VII of the New Jersey Constitution.

65.     If the 2014 Sports Wagering Law is not declared unlawful and injunctive relief not granted, the proliferation of state-sponsored and approved sports gambling in Atlantic City casinos and at New Jersey racetracks will cause immediate and irreparable harm to plaintiffs.  Indeed, the harm will be precisely the same as the harm this Court already found sufficient to warrant injunctive relief when the same plaintiffs challenged the 2012 Sports Wagering Law.  As the Court already concluded, monetary damages would be inadequate to compensate plaintiffs for the irreparable injuries they will suffer.

## COUNT III
### (Violation of PASPA, 28 U.S.C. § 3702(1))
#### (Against Defendant NJSEA)

66.     Plaintiffs repeat and reallege the allegations contained in the foregoing paragraphs as though fully set forth herein.

67.     PASPA prohibits any governmental entity from sponsoring, operating, advertising, promoting, licensing or authorizing sports gambling, sports wagering, or a sports lottery.  (28 U.S.C. § 3702(1).)

68.     NJSEA is a governmental entity.  It owns the Monmouth Park Racetrack and has licensed and authorized NJTHA to offer sports gambling activities at Monmouth Park pursuant to the 2014 Sports Wagering Law.  It also owns the Meadowlands racetrack, at which

sports wagering might also be commenced pursuant to the 2014 Sports Wagering Law.  Any sports gambling at Monmouth Park or Meadowlands racetracks would constitute sponsorship, operation, authorization, and promotion of sports gambling by NJSEA, a governmental entity, in violation of PASPA.  (28 U.S.C. § 3702(1).)

69.     If the 2014 Sports Wagering Law is not declared unlawful and injunctive relief not granted, the proliferation of state-sponsored and approved sports gambling in Atlantic City casinos and at New Jersey racetracks will cause immediate and irreparable harm to plaintiffs.  Indeed, the harm will be precisely the same as the harm this Court already found sufficient to warrant injunctive relief when the same plaintiffs challenged the 2012 Sports Wagering Law.  As the Court already concluded, monetary damages would be inadequate to compensate plaintiffs for the irreparable injuries they will suffer.

**COUNT IV**
**(Violation of PASPA, 28 U.S.C. § 3702(2))**
**(Against Defendant NJTHA)**

70.     Plaintiffs repeat and reallege the allegations contained in the foregoing paragraphs as though fully set forth herein.

71.     Under the plain language of PASPA, persons or entities in New Jersey are prohibited from sponsoring, operating, advertising, or promoting, pursuant to the law or compact of a governmental entity, sports gambling, sports wagering, or a sports lottery.  (28 U.S.C. § 3702(2).)

72.     Defendant NJTHA has announced its intention to begin sports gambling activities at Monmouth Park pursuant to the 2014 Sports Wagering Law.  Such sports gambling would constitute sponsorship, operation, advertising, or promotion of sports wagering pursuant to the law of a governmental entity in violation of PASPA.

73.     In addition, because the NJTHA's operation of Monmouth Park is pursuant to an agreement with defendant NJSEA, the conduct of sports wagering at Monmouth Park constitutes sponsorship, operation, advertising, or promotion of sports wagering pursuant to a compact with a governmental entity in violation of PASPA.

74.     If the 2014 Sports Wagering Law is not declared unlawful and injunctive relief not granted, the proliferation of state-sponsored and approved sports gambling in Atlantic City casinos and at New Jersey racetracks will cause immediate and irreparable harm to plaintiffs.  Indeed, the harm will be precisely the same as the harm this Court already found sufficient to warrant injunctive relief when the same plaintiffs challenged the 2012 Sports Wagering Law.  As the Court already concluded, monetary damages would be inadequate to compensate plaintiffs for the irreparable injuries they will suffer.

WHEREFORE, plaintiffs respectfully seek an Order of this Court:

a.     Declaring that the 2014 Sports Wagering Law violates PASPA by sponsoring, operating, advertising, promoting, licensing, and/or authorizing sports betting schemes in Atlantic City casinos and New Jersey racetracks;

b.     Alternatively declaring that the 2014 Sports Wagering Law violates the New Jersey Constitution;

c.     Pursuant to PASPA, preliminarily and permanently enjoining defendants, and all others acting on their authority, instruction, and behalf, or under the authority of their respective offices, from implementing or enforcing the 2014 Sports Wagering Law, and from sponsoring, operating, advertising, promoting, licensing, or authorizing any lottery, sweepstakes, or other betting, gambling, or wagering scheme based, directly or indirectly, on one

or more competitive games in which amateur or professional athletes participate, or are intended

to participate, or on one or more performances of such athletes in such games;

        d.      Alternatively, pursuant to the New Jersey Constitution,

preliminarily and permanently enjoining defendants, and all others acting on their authority,

instruction, and behalf, or under the authority of their respective offices, from implementing or

enforcing the 2014 Sports Wagering Law;

        e.      Awarding plaintiffs their costs and attorneys' fees; and

        f.      Granting such other and further relief as may be appropriate.


Dated: October 20, 2014                Respectfully Submitted,

                                        **MCCARTER & ENGLISH, LLP**

Of Counsel:

                                        By:    /s/ William J. O'Shaughnessy    
Jeffrey A. Mishkin (pro hac vice forthcoming)    William J. O'Shaughnessy
Anthony J. Dreyer                              Richard Hernandez
**SKADDEN, ARPS, SLATE,**
  **MEAGHER & FLOM LLP**
Four Times Square                        **MCCARTER & ENGLISH, LLP**
New York, New York 10036-6522       Four Gateway Center
(212) 735-3000                          100 Mulberry Street
                                          Newark, New Jersey 07102
Paul D. Clement (pro hac vice forthcoming)    (973) 622-4444
Erin E. Murphy (pro hac vice forthcoming)
**BANCROFT PLLC**                        **Attorneys for Plaintiffs**
1919 M. Street NW, Suite 470          National Collegiate Athletic Association,
Washington, D.C. 20036              National Basketball Association, National
(202) 234-0090                      Football League, National Hockey League,
                                          and Office of the Commissioner of Baseball