**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

NATIONAL COLLEGIATE ATHLETIC
ASSOCIATION, et al.,

              Plaintiffs,

              v.

CHRISTOPHER J. CHRISTIE, et al.,

              Defendants.

Civil Action No. 14-6450 (MAS) (LHG)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

    This matter comes before the Court on Defendant New Jersey Thoroughbred Horsemen's Association, Inc.'s ("NJTHA") Motion for Judgment on $3.4 Million Injunction Bond Plus Interest and Damages. (ECF No. 80.)[1] Plaintiffs[2] National Collegiate Athletic Association ("NCAA"), National Basketball Association ("NBA"), National Football League ("NFL"), National Hockey League ("NHL"), and Office of the Commissioner of Baseball, doing business as Major League Baseball ("MLB"), (collectively "Plaintiffs" or the "Leagues") opposed (ECF No. 91), and NJTHA replied[3] (ECF No. 93). The Court has considered the parties' submissions and decides the matter

---

[1] Unless otherwise noted, citations to the docket refer to Civil Action No. 14-6450.

[2] Plaintiffs originally initiated this action against, among others, former New Jersey Governor Christopher J. Christie in his official capacity. (ECF No. 1.) Although Christopher J. Christie is no longer the current Governor of New Jersey, the Court maintains Christopher J. Christie as a Defendant for consistency.

[3] Plaintiffs filed correspondence with the Court requesting leave to file a sur-reply, contending NJTHA mischaracterized facts and procedural history that foreclosed Plaintiffs' ability to seek

without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, the Court denies NJTHA's Motion for Judgment on $3.4 Million Injunction Bond Plus Interest and Damages.

I. **Background**

The instant motion arises out of a dispute between Plaintiffs and Defendants Christopher J. Christie, former Governor of the State of New Jersey; David L. Rebuck, Director of the New Jersey Division of Gaming Enforcement and Assistant Attorney General of the State of New Jersey; Frank Zanzuccki, Executive Director of the New Jersey Racing Commission; the New Jersey Sports and Exposition Authority; and NJTHA (collectively "Defendants").[4] The underlying facts and procedural history have been discussed previously and need not be repeated here at great length. Instead, the Court provides only those facts immediately relevant to NJTHA's motion.

A. *Christie I*

In 2012, the State of New Jersey enacted legislation that legalized and regulated sports betting at New Jersey horse racetracks and casinos for individuals aged twenty-one and older (the "2012 Law"). The Leagues initiated an action, arguing the law violated the Professional and Amateur Sports Protection Act, 28 U.S.C. §§ 3701-3704 ("PASPA"). PASPA prohibited any individual or public entity from authorizing "betting, gambling, or wagering" on professional or amateur sporting events. 28 U.S.C. § 3702. NJTHA intervened as a Defendant, contending it planned to implement sports betting at the Monmouth Park racetrack. (Mot. to Intervene 7, No.

---

discovery pertaining to damages. (ECF No. 97.) Because the Court finds NJTHA is not entitled to damages, the Court denies as moot Plaintiffs' request to file a sur-reply.

[4] On November 6, 2014, the Presiding Officers of the New Jersey Legislature, Stephen M. Sweeney, then President of the New Jersey Senate, and Vincent Prieto, then Speaker of the New Jersey General Assembly, requested leave to intervene as defendants (ECF No. 46), which the Court granted on November 7, 2014 (ECF No. 48).

12-4947, ECF No. 72-1.) During that action, the predominant issue before the Court was PASPA's constitutionality; specifically, whether it violated the Commerce Clause, the Tenth Amendment, the Due Process Clause and related Equal Protection principles, or the Equal Footing Doctrine. *NCAA v. Christie*, 926 F. Supp. 2d 551, 554 (D.N.J. 2013) ("*Christie I*").[5]

On February 28, 2013, the Court, relying on *Office of the Commissioner of Baseball v. Markell*, 579 F.3d 293 (3d Cir. 2009), found PASPA constitutionally valid, and permanently enjoined the defendants from enforcing the 2012 Law. *Id.* at 579. The Third Circuit subsequently reviewed *de novo* the Court's determination and affirmed, holding, "Having examined the . . . legal issues raised by the parties, we hold that nothing in PASPA violates the U.S. Constitution. The law neither exceeds Congress' enumerated powers nor violates any principle of federalism implicit in the Tenth Amendment or anywhere else in our Constitutional structure." *Christie I*, 730 F.3d 208, 240 (3d Cir. 2013). The Third Circuit further held:

> [U]nder PASPA, on the one hand, a state may repeal its sports wagering ban, a move that will result in the expenditure of no resources or effort by any official. On the other hand, a state may choose to keep a complete ban on sports gambling, but it is left up to each state to decide how much of a law enforcement priority it wants to make of sports gambling, or what the exact contours of the prohibition will be.

*Id.* at 233. On June 23, 2014, the Supreme Court denied certiorari. *Christie I*, 134 S. Ct. 2866 (2014).

**B.** *Christie II*

In October 2014, the State enacted legislation designed to partially repeal state laws and regulations that prohibited sports gambling in certain circumstances (the "2014 Repealer Law").

---

[5] The Court refers to 926 F. Supp. 2d 551 (D.N.J. 2013) and all related proceedings arising under docket number 12-4947, and all appeals arising therefrom as *Christie I*.

3

On October 20, 2014, the Leagues filed another Complaint against Defendants, which now included NJTHA, seeking to enjoin implementation and enforcement of the 2014 Repealer Law. (Compl., ECF No. 1.) The following day, in response to NJTHA's stated intention to immediately implement sports betting, the Leagues moved for a temporary restraining order ("TRO") and a preliminary injunction, requesting that the Court enjoin Defendants from "giving effect to" the 2014 Repealer Law. (TRO Appl. Br. 1, ECF No. 12-2.) NJTHA opposed, and further requested that the Court order Plaintiffs to post a security bond pursuant to Federal Rule of Civil Procedure 65(c). (NJTHA TRO Opp'n Br. 35, ECF No. 21.)

The Court granted the Leagues' TRO application in an oral opinion. (TRO Op. Oct. 24, 2014, ECF No. 41.) The Court also ordered the Leagues to post a security bond in the amount of $1.7 million. (*Id.* at 19.) After extending the TRO another fourteen days, the Court ordered the Leagues to post another $1.7 million, totaling $3.4 million. (ECF No. 38; *see also* Bond Correspondence, ECF No. 47.)

On November 21, 2014, the Court *sua sponte* consolidated the Leagues' preliminary injunction motion with a final disposition on the merits and granted summary judgment in the Leagues' favor. *NCAA v. Christie*, 61 F. Supp. 3d 488, 491 (D.N.J. 2014) ("*Christie II*").[6] Unlike the Court's *Christie I* analysis, which considered PASPA's constitutionality, in *Christie II*, the Court confined its analysis to "the novel issue of whether the 2014 [Repealer] Law, which purport[ed] to *partially* repeal New Jersey legislation" effectively amounted to an authorization of sports betting in violation of PASPA. *See id.* at 498. Relying on the Third Circuit's *Christie I* decision, the Court found the 2014 Repealer Law authorized sports betting in violation of PASPA. *Id.* at 498. Specifically, the Court stated,

---

[6] The Court refers to 61 F. Supp. 3d 488 (D.N.J. 2014) and all related proceedings arising under docket number 14-6450, and all appeals arising therefrom as *Christie II*.

4

> While styled as a *partial repeal*, the 2014 [Repealer] Law would have the same primary effect of the 2012 Law—allowing sports wagering in New Jersey's casinos and racetracks for individuals age twenty-one and over but not on college sporting events that take place in New Jersey or on New Jersey college teams. This necessarily results in sports wagering with the State's imprimatur, which goes against the very goal of PASPA—to ban sports wagering pursuant to a state scheme.

*Id.* at 505. On December 2, 2014, while the matter was on appeal before the Third Circuit, the Court denied the Leagues' request to discharge the bond. (ECF No. 72.)

A Third Circuit panel subsequently affirmed the Court's decision. *Christie II*, 799 F.3d 259 (3d Cir. 2015). In August 2016, the Third Circuit, sitting *en banc*, again affirmed the Court's decision by a nine-to-three vote, stating, "While artfully couched in terms of a repealer, the 2014 [Repealer] Law essentially provides that, notwithstanding any other prohibition by law, casinos and racetracks shall hereafter be permitted to have sports gambling. This is an authorization." *Christie II*, 832 F.3d 389, 397 (3d Cir. 2016). Consequently, the Third Circuit held, the 2014 Repealer Law "violates PASPA because it authorizes by law sports gambling." *Id.* at 396.

On May 14, 2018, the Supreme Court held PASPA unconstitutionally commandeered state legislatures in violation of the Tenth Amendment. *Christie II*, 138 S. Ct. 1461 (2018). In arriving at that conclusion, however, the Supreme Court held, "When a State completely or partially repeals old laws banning sports gambling, it 'authorize[s]' that activity." *Id.* at 1472, 1474. Thus, the Supreme Court determined that even though the 2014 Repealer Law was framed as a repealer, it effectively authorized sports gambling. After making this determination, the Supreme Court turned to the issue of PASPA's constitutionality, and held PASPA violated the anticommandeering doctrine. *Id.* at 1478. NJTHA filed the instant Motion shortly after the Supreme Court issued its decision. (ECF No. 80.)

## II. Discussion

Under Federal Rule of Civil Procedure[7] 65(c), "the [C]ourt may issue a preliminary injunction or a [TRO] only if the movant gives security in an amount that the [C]ourt considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." An injunction bond issued under Rule 65(c) "provides a fund to use to compensate incorrectly enjoined defendants." *Sprint Commc'ns Co. v. CAT Commc'ns Int'l Inc.*, 335 F.3d 235, 240 (3d Cir. 2003) (citation omitted). "A wrongfully enjoined defendant must establish what damages were proximately caused by the erroneously issued injunction in order to recover and the alleged damages cannot be speculative." *Va. Plastics Co. v. Biostim, Inc.*, 820 F.2d 76, 80 n.6 (3d Cir. 1987) (citation omitted). Rule 65.1 provides the procedure for an enjoined party to collect damages on an injunction bond. Fed. R. Civ. P. 65.1.

The Court, accordingly, must determine whether NJTHA was wrongfully enjoined. "[A] party is wrongfully enjoined when it had a right all along to do what it was enjoined from doing." *Latuszewski v. VALIC Fin. Advisors, Inc.*, 393 F. App'x 962, 966 (3d Cir. 2010) (quoting *Glob. Naps, Inc. v. Verizon New England, Inc.*, 489 F.3d 13, 22 (1st Cir. 2007)). Thus, the issue before the Court is whether NJTHA "had a right all along" to act pursuant to the 2014 Repealer Law—a law that violated a federal statute that the Third Circuit had already held was constitutional and upon which the Supreme Court declined certiorari when originally provided with the opportunity to consider the statute's constitutionality.

NJTHA's contention that it is entitled to damages under the injunction bond conflates the issue of whether the 2014 Repealer Law authorized sports betting with the Supreme Court's ultimate holding that PASPA is unconstitutional. As the Leagues assert, PASPA's

---

[7] Unless otherwise noted, all references to Rules hereinafter refer to the Federal Rules of Civil Procedure.

"constitutionality was not even at issue in the TRO proceedings. Rather, the issue for which the bond was posted in 2014 was whether New Jersey's 'partial repeal' of its sports wagering prohibitions was an authorization on sports betting" in violation of PASPA. (Pls.' Opp'n Br. 18, ECF No. 91.)[8]

In issuing the TRO, this Court was presented with the narrow question of whether the 2014 Repealer Law, styled as a "partial repeal," effectively authorized sports betting in violation of PASPA. And, factually speaking, the Court issued the bond to assure the interim holding that the 2014 Repealer Law was an authorization in violation of a previously-affirmed constitutional statute. This Court, the Third Circuit, and the Supreme Court all found the 2014 Repealer Law authorized sports betting. That PASPA's constitutionality was introduced on appeal does not convert the bond, which assured that the 2014 Repealer Law amounted to an authorization, into a bond that assured any and all possibilities.

---

[8] The parties also argue the Court's analysis must come down to a matter of perspective. Specifically, NJTHA argues the Court must consider the issue not "from the perspective of one looking forward from the date the injunction was issued, but instead from the perspective of one looking backward with the benefit of hindsight from the date of the ultimate decision on the merits." (NJTHA Reply Br. 3, ECF No. 93.) NJTHA therefore contends that it was always entitled to conduct sports betting at Monmouth Park because the Supreme Court invalidated PASPA. (*Id.*) In contrast, the Leagues argue the Court must consider the issue from the perspective of the state of the law in 2014, and "[t]hat the Supreme Court struck down PASPA . . . in 2018 is insufficient to summarily conclude that NJTHA had the right to operate a sports book in 2014." (Pls.' Opp'n Br. 17.) Thus, the Leagues contend that because "[t]he Third Circuit had repeatedly determined PASPA to be constitutional," the Court did not wrongfully enjoin NJTHA when it relied upon binding Third Circuit precedent. (*Id.*) NJTHA's argument fails because its inability to conduct sports betting was secondary to the issue of whether the 2014 Repealer Law amounted to an authorization. As the Leagues stated in their Reply in support of their preliminary injunction motion, "Unlike *Christie I*, this case does not require the Court to decide issues of standing and the constitutionality of PASPA. This case simply requires a construction of the 2014 Sports Wagering Law to determine that it does not comply with PASPA . . . ." (Pls.' Consolidated Reply in Supp. of a Mot. for a Prelim. Inj. 18, Ex. 26, ECF No. 80-8.)

The NJTHA ultimately prevailing on the constitutionality issue does not equate to it being wrongfully enjoined on the authorization issue. The Court, accordingly, finds NJTHA was not wrongfully enjoined based upon the instant matter's specific procedural and factual background.

Notwithstanding the Court's analysis regarding whether NJTHA was wrongfully enjoined, the Court also finds good cause exists under the instant facts to deny NJTHA damages arising under the injunction bond. *See Coyne-Delany Co. v. Capital Dev. Bd.*, 717 F.2d 385, 390 (7th Cir. 1983) ("[A] prevailing defendant is entitled to damages on the injunction bond unless there is a good reason for not requiring the plaintiff to pay in the particular case."). In *Coyne*, a case upon which both parties rely, the Seventh Circuit held:

> In deciding whether to withhold costs or injunction damages, not only is the district court to be guided by the implicit presumption in Rules 54(d) and 65(c) in favor of awarding them,[9] but the ingredients of a proper decision are objective factors—such as the resources of the parties, the defendant's efforts or lack thereof to mitigate [its] damages, and the outcome of the underlying suit—accessible to the judgment of a reviewing court.

*Id.* at 392 (footnote added). (NJTHA Moving Br. 32, ECF No. 80-1; Pls.' Opp'n Br. 17-18.) Notably, the Seventh Circuit further established that a change in the law may be "a legitimate consideration" for the Court to examine in determining whether to award injunction damages to a prevailing party. *Id.* at 390, 392-93 (affirming the district court's consideration that "[t]he law as it existed at the time the case was filed clearly favored the plaintiffs. It would be unreasonable to require a party to anticipate a change in the law . . . ."). Here, in 2014, PASPA was constitutionally valid. This Court found, and the Third Circuit and Supreme Court confirmed, the 2014 Repealer

---

[9] It is unclear whether a wrongfully enjoined party is entitled to a presumption of recovery of damages. *See, e.g., Latuszewski*, 393 F. App'x at 966 (internal quotation marks and citation omitted) ("The [plaintiffs] argue that there is a presumption in favor of recovery of damages from a wrongful injunction, but even if that is so, the wrongfully enjoined party is only entitled to provable damages.").

Law effectively authorized sports betting. Thus, the law as it existed in 2014 clearly favored the Leagues, and it would be unreasonable for the Court to allow NJTHA to recover under the injunction bond in light of the Leagues' correct interpretation that the 2014 Repealer Law authorized sports betting in violation of the governing law at that time. The Court, accordingly, finds good cause exists to deny NJTHA damages under the injunction bond.[10] *See, e.g., id.* at 390 ("[A] district court has unquestioned power in an appropriate case not to award costs to the prevailing party and not to award damages on an injunction bond even though the grant of the injunction was reversed . . . .").

### III. Conclusion

The Court denies NJTHA's Motion for Judgment on the $3.4 Million Injunction Bond and Damages. The Court will issue an Order consistent with this Memorandum Opinion.

／s／ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

---

[10] The Court further questions the extent to which it could award NJTHA the full amount of damages under the injunction bond considering the Leagues posted the bond for the security of all Defendants, and not solely NJTHA. (*See* Bond Correspondence.) The Court, however, need not address that concern or NJTHA's remaining arguments because it finds NJTHA was not wrongfully enjoined and, notwithstanding the wrongfully enjoined analysis, good cause exists to deny NJTHA damages under the injunction bond.