**\*NOT FOR PUBLICATION\***

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> PHILIP D. MURPHY, et al., <br><br> Defendants. | Civ. Action No. 14-06450 (FLW) <br><br> **OPINION** |

**WOLFSON, Chief Judge:**[1]

This matter comes before the Court on the motion of defendant, the New Jersey Thoroughbred Horsemen's Association, Inc. ("NJTHA"). In its motion, NJTHA seeks an order adjudging that plaintiffs, the National Collegiate Athletic Association, the National Basketball Association, National Football League, the National Hockey League, and Office of the Commissioner of Baseball (collectively, "Plaintiffs"), are jointly and severally liable to NJTHA for damages in excess of a $3.4 million injunction bond. Plaintiffs posted the $3.4 million bond pursuant to Fed. R. Civ. P. 65(c), as security for the Court granting Plaintiffs' application for a temporary restraining order ("TRO") that, among other things, barred NJTHA from conducting sports gambling in New Jersey. NJTHA contends that it is entitled to "immediate judgment" on the $3.4 million bond, as well as damages in excess of the $3.4 million bond amount for losses that its business sustained, because, according to NJTHA, the TRO was obtained by Plaintiffs in

---

[1] On June 12, 2020, this matter was reassigned from the Honorable Michael A. Shipp, U.S.D.J., to the undersigned judge for all further proceedings. (*See* ECF No. 138.)

"bad faith." Plaintiffs oppose NJTHA's motion, arguing, *inter alia*, that NJTHA's request for "bad faith" damages in excess of the bond amount is "wholly unprecedented" and cannot be awarded because NJTHA has never asserted any affirmative claim for such damages in any pleadings filed in this case.

I have considered the parties' submissions and have decided the matter without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons discussed below, I find that NJTHA has not properly pleaded any legally cognizable claim or counterclaim for "bad faith" damages sustained during the period after the expiration of the TRO. Accordingly, to the extent that NJTHA seeks damages sustained during the post-TRO period, NJTHA's motion is **DENIED**. I will hold an evidentiary hearing, pursuant to Fed. R. Civ. P. 65 and 65.1, to determine the amount of "provable damages" sustained by NJTHA during the 28-day period in which the TRO was in effect. I reserve judgment until after the evidentiary hearing on the amount of damages, up to the bond amount, to be awarded for the 28-day TRO period, as well as on the issue of whether NJTHA can recover "bad faith" damages in excess of the bond amount for that period.[2]

## I.   BACKGROUND[3]

In 2014, the New Jersey legislature enacted a law repealing certain state law provisions that prohibited gambling at horserace tracks and casinos (the "2014 Act"). *See* New Jersey Sports

---

[2] As part of their opposition to NJTHA's present motion, Plaintiffs have also filed a "cross-motion for dismissal," arguing that NJTHA's claim for "bad faith" damages in excess of the bond amount is barred by the doctrines of waiver and issue preclusion, and otherwise fails to state a claim. (*See* ECF No. 140.) Because I find that NJTHA's claim for "bad faith" damages sustained during the post-TRO period has not been properly asserted in any pleading filed in this action, and that it would be premature for me to decide the validity of such claim for the period during which the TRO was in effect, I do not reach the additional arguments raised in Plaintiffs' cross-motion. Plaintiffs' cross-motion is **DENIED** at this time. Plaintiffs may renew their arguments with respect to NJTHA's claim for "bad faith" damages, if it is ultimately determined that NJTHA can establish "provable damages" in excess of the bond amount.

[3] This Opinion recounts the background and procedural history of this case to the extent it is relevant to deciding the present motion for partial summary judgment. A more thorough recitation of the

*(Footnote continued on next page.)*

Wagering Law, P.L. 2014, c. 62.  In response to the 2014 Act, NJTHA immediately announced its intention to conduct sports gambling at the Monmouth Park horse racetrack.  On October 20, 2014, Plaintiffs initiated this action with the filing of a complaint in federal court against the New Jersey Governor and other state officials (collectively, the "State Defendants"), seeking to restrain the State Defendants from implementing the 2014 Act, on the basis that New Jersey's "authorization" of sports gambling violated the federal Professional and Amateur Sports Protection Act ("PASPA"), 28 U.S.C. §§ 3701-3704.  (*See* ECF No. 1.)[4]  Plaintiffs also sued NJTHA (*see id.*) and moved for a TRO and a preliminary injunction, asserting irreparable harm if NJTHA proceeded with its stated intention of conducting sports gambling.  (*See* ECF No. 12.)  NJTHA opposed Plaintiffs' request, arguing, among other things, that Plaintiffs' assertion that sports gambling would cause harm was false.  (*See* ECF No. 21 at 29-33.)  NJTHA also complained that Plaintiffs had not posted a bond, as required by Federal Rule of Civil Procedure 65(c).  (*Id*. at 35-36.)  Importantly, it appears that, to date, NJTHA has never filed any answer or other responsive pleading in this action.

On October 24, 2014, the Honorable Michael A. Shipp, U.S.D.J., granted the requested TRO (*see* ECF No. 32), finding that Plaintiffs had demonstrated a threat of irreparable injury if NJTHA proceeded with its plans to conduct sports gambling (*see* October 24, 2014 Hr'ng Tr. at 13:20-23, 13:24-15:8, ECF No. 41).  Judge Shipp also ordered Plaintiffs to post a $1.7 million bond, pursuant to Federal Rule of Civil Procedure 65(c).  (*See id*. at 19:16-17.)  In ordering the bond, Judge Shipp explained that the bond was "on the high side to avoid any potential loss to defendants."  (*Id*. at 19:15-16.)  Judge Shipp also invited NJTHA to make an application to the

---

background and procedural history of this case can be found in the Third Circuit's most recent opinion filed in this case.  *See Nat'l Collegiate Athletic Ass'n v. Governor of New Jersey*, 939 F.3d 597 (3d Cir. 2019).

[4]    The State Defendants have not joined NJTHA's present motion.

3

Court to increase the bond amount if NJTHA believed that enjoining it from offering sports gambling "pose[s] a risk of harm greater than the value of the bond currently set." (*Id*. at 19:18-20.) Shortly thereafter, on October 27, 2014, Judge Shipp extended the TRO for an additional two weeks—to November 21, 2014—and doubled the bond amount—to a total of $3.4 million. (*See* ECF No. 38). It appears that NJTHA did not seek to enlarge the $3.4 million bond.

Just before the TRO was set to expire, Judge Shipp converted the scheduled hearing on Plaintiffs' motion for a preliminary injunction into a final summary judgment hearing. (*See* ECF Nos. 50, 56.) On November 21, 2014, Judge Shipp granted summary judgment to Plaintiffs, holding that the 2014 Act was "invalid as preempted by PASPA." *Nat'l Collegiate Athletic Ass'n v. Christie*, 61 F. Supp. 3d 488, 506 (D.N.J. 2014). However, Judge Shipp declined to enter a permanent injunction against NJTHA.[5] On the same day, the four-week-old TRO expired by its own terms. Three days later, on November 24, 2014, NJTHA filed a notice of appeal. (*See* ECF No. 68.) NJTHA did not request the posting of any post-judgment or appeal bond.[6]

On appeal, the Third Circuit, ruling *en banc*, affirmed Judge Shipp's grant of summary judgment. *See Nat'l Collegiate Athletic Ass'n v. Governor of New Jersey*, 832 F.3d 389, 392 (3d Cir. 2016) (en banc). However, the Supreme Court granted *certiorari* and, on May 14, 2018,

---

[5] The reasons for Judge Shipp declining to enter a permanent injunction against NJTHA are not clear from the record, and the parties do not provide any elaboration in their respective briefs. However, Judge Shipp permanently enjoined the State Defendants from enforcing the 2014 Act, thereby effectively enjoining NJTHA from offering sports gambling pursuant to that law. *See Nat'l Collegiate Athletic Ass'n*, 61 F. Supp. 3d at 507-508.

[6] I note that, in opposition to Plaintiffs' motion for a preliminary injunction, NJTHA did seek issuance of a bond for "the entire period between [the preliminary injunction's] issuance and final judgment" in the amount of approximately $24.4 million. (*See* ECF No 42 at 36-39). That request, however, was mooted when the Judge Shipp granted summary judgment to Plaintiffs in lieu of any preliminary relief and declined to enter a permanent injunction against NJTHA.

reversed the Third Circuit's judgment on the ground that PASPA was unconstitutional. *See Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. ___, 138 S. Ct. 1461, 1485 (2018).

Following the Supreme Court's decision, on May 24, 2018, NJTHA filed a motion before Judge Shipp for judgment on the $3.4 million bond, arguing that it had been "wrongfully enjoined" pursuant to Fed. R. Civ. P. 65(c). (*See* ECF No. 80.) In its motion, NJTHA also sought damages for the post-TRO period (*i.e.*, from the date of Judge Shipp's grant of summary judgment through the date of the Supreme Court's judgment). NJTHA contended it was entitled to damages allegedly sustained during the post-TRO period on the basis of Plaintiffs' "bad faith by wrongfully blocking the NJTHA from operating a sports betting venue." (*Id*. at 2.) Judge Shipp ordered briefing on a number of issues, including whether NJTHA's claim for damages greater than the bond amount could be decided as a matter of law. (*See* ECF No. 92.) On November 16, 2018, Judge Shipp denied NJTHA's motion, finding that it was not "wrongfully enjoined" and that, in any event, good cause existed to deny the motion. (*See* ECF Nos. 102, 103.) Judge Shipp did not address NJTHA's argument that it was entitled to post-TRO damages for Plaintiffs' bad faith. On November 19, 2018, NJTHA filed a notice of appeal. (*See* ECF No. 104)

On September 24, 2019, a three-judge panel of the Third Circuit vacated Judge Shipp's denial of NJTHA's request for judgment on the $3.4 million bond, determining that NJTHA had been "wrongfully enjoined" and thus was eligible to seek recovery. *See Nat'l Collegiate Athletic Ass'n v. Governor of New Jersey*, 939 F.3d 597, 606 (3d Cir. 2019), *cert. denied sub nom. Nat'l Collegiate Athletic Ass'n v. New Jersey Thoroughbred Horsemen's Ass'n, Inc.*, 140 S. Ct. 2764 (2020). The Third Circuit further remanded the case "for the District Court to determine the amount to be collected." *Id*. at 609. In a final footnote to its Opinion, the Third Circuit stated: "[o]n remand, NJTHA will have the burden of showing provable damages" and that, "[a]lthough

5

it is not required to prove an amount to a mathematical certainty, it must establish what damages were proximately caused by the erroneously issued injunction . . . and the alleged damages cannot be speculative." *Id.* at 609 n.15 (internal quotation marks and citations omitted). Importantly for the purposes of the present motion, however, the Third Circuit expressly declined to "consider" the validity of NJTHA's "bad faith" claim for excess damages in connection with the bond, because that issue had "not [been] addressed by the District Court." *Id.* at 603 n.6.

On April 6, 2020, NJTHA filed the present motion. (*See* ECF No. 125.) Shortly thereafter, on June 12, 2020, this case was reassigned to me for all further proceedings. (*See* ECF No. 138.) In its motion, NJTHA seeks an order granting: "(1) judgment, jointly and severally, against [Plaintiffs], in the full amount of the $3.4 million injunction bond plus interest; (2) partial summary judgment as to Plaintiffs' joint and several liability for damages in excess of bond amount; (3) a declaration that NJTHA has the right to have a jury decide the amount of money damages Plaintiffs caused NJTHA to suffer by intentionally and wrongfully preventing it for nearly four years (October 24, 2014 - May 14, 2018) from conducting lawful sports gambling at Monmouth Park; and (4) counsel fees and costs of suit." (ECF No. 125.) The length of time covered by NJTHA's motion includes both the 28-day period during which the TRO was in effect, as well the period after the expiration of the TRO through the date of the Supreme Court's judgment. I address each of these two separate time periods, in turn, below. In response to NJTHA's motion, Plaintiffs filed a "cross-motion for dismissal of . . . NJTHA's request for damages in excess of [the] bond amount as a matter of law." (*See* ECF No. 140 (internal quotation marks omitted).)

## II. DISCUSSION

### A. Damages Sustained During the 28-Day TRO Period.

NJTHA seeks to recover damages that it allegedly sustained during the 28-day period during which the TRO was in effect, *i.e.*, from October 24, 2014 to November 21, 2014. Pursuant

to the Third Circuit's instructions to this Court on remand, "NJTHA is entitled to recover provable damages up to the bond amount." *Nat'l Collegiate Athletic Ass'n v. Governor of New Jersey*, 939 F.3d 597, 609 (3d Cir. 2019). In its motion, NJTHA relies on two separate certifications to support its damages calculations: (1) the certification of Dennis A. Drazin (*See* ECF No. 125-2 at ¶ 32 (citing ECF 21-11)); and (2) the certification of Chris Grove (ECF No. 125-2 at ¶ 74 (citing ECF No. 82-2)). I am not satisfied that, based on this written record, NJTHA has carried its burden of proving its damages are up to the bond amount, particularly since Plaintiffs have not had an opportunity to challenge NJTHA's experts.[7] Accordingly, I will hold an evidentiary hearing to determine the amount of "provable damages" (including interest)[8] that NJTHA sustained during the 28-day TRO period. At the evidentiary hearing, NJTHA will have the burden of "establish[ing] what damages were proximately caused by the erroneously issued injunction." *Nat'l Collegiate Athletic Ass'n*, 939 F.3d 609 n.15; *see also Virginia Plastics Co. v. Biostim Inc.*, 820 F.2d 76, 80 (3d Cir. 1987) (noting that "[t]he absence of an evidentiary hearing raises the question of whether [the plaintiff]'s due process rights were ignored").

---

[7] Indeed, in its opposition to NJTHA's motion, Plaintiffs contend that the submissions of Messrs. Drazin and Grover are "baseless" and "fail[] to comply either with the disclosure requirements of Federal Rule of Civil Procedure 26(a) or the strict requirements for expert testimony under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and Federal Rules of Evidence 702 and 703." (ECF No. 140-1 at 19-20.) Plaintiffs further assert that they intend to move to strike these certifications "at the appropriate time (*i.e.*, when the parties address the accuracy of NJTHA's damages calculations)." (*Id.* at 20.) I reserve any decision on the admissibility of these certifications pending the evidentiary hearing that I am scheduling.

[8] The parties do not appear to dispute that NJTHA is entitled, subject to this Court's discretion, to interest on its provable damages up to the bond amount; that is, interest added to provable damages cannot exceed the bond. (*See* ECF No. 125-1 at 8 fn. 5; ECF No. 140-1 at 20-21.) *See also Ambromovage v. United Mine Workers*, 726 F.2d 972, 982 (3d Cir. 1984) ("[I]n the absence of a Congressional directive to the contrary, the district court has broad discretion in determining whether to allow pre-judgment interest"). I note, however, that NJTHA cites to no rule or other authority (and the Court has not been able to find one through its own research) to support its related request for attorneys' fees. Accordingly, Plaintiffs' motion is denied to the extent it seeks attorneys' fees.

Relatedly, Plaintiffs assert that they are entitled to "discovery concerning NJTHA's attempt to meet its burden to prove its actual damages during the 28-day TRO period." (ECF No. 140-1 at 16.) I find that limited discovery is warranted in order to provide Plaintiffs an adequate opportunity to challenge NJTHA's damages assumptions and calculations by their experts. *See In Momenta Pharm., Inc. v. Amphastar Pharm., Inc.*, 323 F. Supp. 3d 142, 147 (D. Mass. 2018) (acknowledging that "[Plaintiff] ha[d] made a persuasive argument for limited discovery before being required to respond to [Defendant]'s bond motion"); *In Front Range Equine Rescue v. Vilsack*, 2015 U.S. Dist. LEXIS 178713, at *35 (D.N.M. Nov. 12, 2015) (stating that it would be "inequit[able]" to "to hold Plaintiffs financially responsible for a TRO," where the amount of lost profits claimed by the defendants were "hypothetical" and "never tested by discovery and meaningful cross-examination"); *cf. Virginia Plastics Co.*, 820 F.2d at 79-81. Accordingly, prior to the evidentiary hearing, Plaintiffs may depose NJTHA's damages expert and may request any documents that NJTHA intends to offer in support of its damages calculation. In addition, at the evidentiary hearing, Plaintiffs' counsel will have the opportunity to rebut NJTHA's evidence, including through cross-examination of NJTHA's damages expert and other potential witnesses.[9]

### B. Damages Sustained During the Post-TRO Period.

In addition to seeking damages sustained during the TRO period, NJTHA also moves to recover damages in excess of the $3.4 million bond amount for losses that its business sustained during the "nearly four years" after the TRO expired as a result of Plaintiffs' alleged "bad faith" in preventing NJTHA from operating a sports betting venue. NJTHA asserts that it is entitled to

---

[9] I note that, on November 12, 2020, I held a conference call with counsel to discuss matters related to the evidentiary hearing. During the conference call, I explained to the parties that I believed an evidentiary hearing was necessary to establish "provable damages," pursuant to the Third Circuit's instructions. I further directed the parties to consult with the magistrate judge assigned to this matter for any discovery-related issues in advance of the evidentiary hearing.

damages sustained during the post-TRO period because, "as a matter of law, a party who in bad faith obtains interim injunctive relief is liable to the 'wrongfully enjoined' party for damages in excess of the bond amount." (ECF No. 125-1 at 19.) NJTHA further contends that the alleged "liability for damages above the bond amount does not require a separate bond, is not dependent on a bond, and is not rooted in the existence of a bond," but rather "derives exclusively from the [Plaintiffs'] bad faith conduct by lying to the court." (ECF No. 141 at 16.) NJTHA argues that that its "claim for damages above the bond amount sounds in tort" and that any such "claim for damages above the bond amount fits squarely within the court's inherent power to award damages to a wrongfully enjoined party in order to protect the integrity of the justice system." (*Id*. at 11, 15.)

NJTHA supports its request for post-TRO damages based on Plaintiff's alleged "bad faith" by citing to *Don Post Studios, Inc. v. Cinema Secrets, Inc.*, 148 F. Supp. 2d 572 (E.D. Pa. 2001) and in *qad. Inc. v. ALN Assocs., Inc.*, 781 F. Supp. 561 (N.D. Ill. 1992). In both of those cases, the district courts determined that further proceedings were warranted to determine the amount of damages, in excess of the bond amount, that a "wrongfully enjoined" defendant could recover where interim injunctive relief had been obtained by the plaintiff in "bad faith." In *Don Post Studios*, the "plaintiffs filed a frivolous, objectively unreasonable lawsuit and sought an injunction on the basis of a copyright that plaintiffs knew to be invalid." 148 F. Supp. 2d at 575. The district court ordered a hearing to consider the amount of excess damages suffered by the "wrongfully enjoined" defendant, including the amounts by which the plaintiffs had been "unjustly enriched" as a result of their improper conduct that resulted in the issuance of a temporary restraining order. *Id*. at 576 n.5. Likewise, in *qad. Inc.*, the plaintiff based its request for a preliminary injunction on copyrights that it did not actually own, engaging in "egregious" copyright misuse and making

9

"knowing falsehood[s]" to the court regarding objective facts. 781 F. Supp. at 562-63. The district court, having found that the plaintiff had "abused the system" in obtaining the preliminary injunction, held that "the award of any damages that were suffered by [the defendant] as the injured party" came within the court's "inherent power." *Id*. at 563.[10]

In response to NJTHA's motion, Plaintiffs assert that NJTHA's claim for "bad faith" damages allegedly sustained after the TRO expired is "wholly unprecedented," "utterly lacking any legal support," and does "not comport with Supreme Court and Third Circuit precedent establishing that '[a] party injured by the issuance of an injunction later determined to be erroneous has no action for damages in the absence of a bond.'" (*See* ECF No. 140-1 at 23-24; ECF No. 142 at 3-4 (quoting *W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber*, 461 U.S. 757, 770 n.14 (1983) and *Instant Air Freight Co. v. C.F. Air Freight, Inc.,* 882 F.2d 797, 804 (3d Cir. 1989)). Plaintiffs further contend that "NJTHA points to no authority supporting its alleged right to recover 'bad faith' damages under an unnamed 'tort' claim unmoored from any injunction bond or any pleading." (ECF No. 142 at 3.) Plaintiffs note that neither of the district courts in *Don Post Studios* or *qad, Inc.*, the two cases on which NJTHA relies, ever suggested that "bad faith" damages in excess of the bond amount were available under a "tort" theory. (*Id*. at 142 at 3-4). Plaintiffs reason that, even assuming that an independent tort for "bad faith" damages does exist, NJTHA has never pleaded any such cause of action in this case, nor has NJTHA attempted to "describe[] the required elements of [its] purported non-bond-related 'tort' claim." (*Id*. at 4.)

---

[10] I note that the *Don Post Studios* case appears to have ultimately settled out of court before the district court ever conducted a hearing to determine the amount of excess damages. *See Don Post Studios, et al. v. Cinema Secrets, Inc.*, Doc. No. 126 (Dkt. 2:99-cv-05731-ER) (E.D. Pa.). As for *qad, Inc.*, the district court stated in its opinion that it was "ready . . . to proceed with the damages issues whenever the litigants are" and "w[ould] await th[e] [parties'] early input on that score." 781 F. Supp. at 564. However, this Court has not been able to confirm from the record whether that court conducted further proceedings on the issue of excess damages.

Having considered the parties' arguments and the relevant case law, this Court finds that it cannot entertain Plaintiff's request for "bad faith" damages sustained during the post-TRO period in the form that it has currently been presented to this Court. As a preliminary matter, I note that NJTHA brings its request pursuant to Rule 56 of the Federal Rules of Civil Procedure. That Rule clearly assumes that the moving party has already asserted a predicate "claim or defense" as a basis for moving for summary judgment. *See* Fed. R. Civ. P. 56(a) (stating, in pertinent part, that "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought"). In this case, however, NJTHA has not asserted any claim for "bad faith" (whether under a "tort" theory or otherwise) in any pleading filed with this Court. Indeed, NJTHA has not filed any pleading (*e.g.*, an answer with counterclaims) at all in this action. Rather, as a basis for its request for "bad faith" damages, NJTHA relies entirely upon a "statement of undisputed material facts," which it attaches to its motion pursuant to Local Civil Rule 56.1. (*See* ECF No. 125-2.) However, a statement of undisputed facts filed pursuant to Local Civil Rule 56.1 does not constitute a proper pleading in federal court. *See* Fed. R. Civ. P. 7(a) (listing the only allowable pleadings).

NJTHA also invokes Rule 65(c) of the Federal Rules of Civil Procedure, as well as the Court's "inherent authority," as bases for its request for "bad faith" damages during the post-TRO period. Rule 65(c) states, in relevant part:

> The court may issue *a preliminary injunction or a temporary restraining order* only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.

Fed. R. Civ. P. 65(c) (emphasis added). By its words, Rule 65(c) addresses the security that is required to pay the costs and damages sustained by the imposition of a *preliminary injunction* or a *temporary restraining order*. "Such protection is important in the preliminary injunction context

11

[or temporary restraining order context], for 'because of attenuated procedure, an interlocutory order has a higher than usual chance of being wrong.'" *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 210 (3d Cir. 1990) (quoting *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 804 (3d Cir. 1989)). However, nowhere in Rule 65(c) does it state or imply that a wrongfully enjoined party may recover damages sustained during the period *after* the expiration of the preliminary injunction or temporary restraining order. Indeed, the purpose of the bond requirement—to account for the increased risk of an incorrect ruling due to the interlocutory nature of a preliminary injunction—is no longer present once the preliminary injunction or temporary restraining order expires.

The scant case law on which NJTHA relies does not support the proposition that this Court may award damages sustained during the post-TRO period—whether pursuant to Rule 65(c) or any "inherent authority"—based solely on unpleaded allegations of bad faith. Indeed, the two cases on which NJTHA relies for support, *i.e., Don Post Studios, Inc.* and *qad. Inc.,* are distinguishable. Both of those cases involved damages that were sustained while a preliminary injunction or temporary restraining order was in effect. Here, in contrast, NJTHA seeks damages that were almost entirely sustained after the TRO expired. *Don Post Studios* and *qad, Inc.* do not stand for the proposition that this Court has the "inherent authority" to award substantial damages—in this case, $140 million or more—for lost business sustained *after* the expiration of the preliminary injunction or temporary restraining order. Rather, those cases simply stand for the proposition that a district court, in the view of those two courts, may award "bad faith" damages

in excess of the bond amount that are sustained *during* the imposition of a preliminary injunction or temporary restraining order.[11]

Neither the Third Circuit, nor any other circuit, has ever suggested, let alone decided, that a district court has the "inherent authority" to award "bad faith" damages for the entire period between the expiration of a preliminary injunction or temporary restraining order and a final appealed judgment. In the absence of any case law to support NJTHA's request for substantial damages during the post-TRO period which would eclipse the original bond amount, this Court does not find any basis to entertain such a request as a procedural matter. Rather, the Court finds that it is appropriate to require a party who believes it has suffered an injury to plead that claim pursuant to the procedures set forth in the Federal Rules of Civil Procedure, so that the parties can fully litigate the claim, including through motion practice and discovery. It was not done so here. Accordingly, to the extent that NJTHA believes it has a legally cognizable claim for "bad faith" damages arising after the expiration of the TRO, NJTHA may proceed only by affirmatively stating such claim in a proper pleading.[12]

---

[11] I note that even this limited proposition is tenuous. The two decisions relied upon by NJTHA, *i.e.*, *Don Post Studios, Inc.* and *qad. Inc.*, both cite for support to *Coyne-Delany Co. v. Capital Dev. Bd. of State of Ill.*, 717 F.2d 385 (7th Cir. 1983). However, in *Coyne*, the defendant had "conceded" that the plaintiff "brought [its] suit in good faith," so the court did not need to decide whether it had any authority to award excess damages under Rule 65. 717 F.2d at 394. Rather, the court in *Coyne* explicitly stated: "We therefore need not decide whether, if bad faith were shown, [the defendant] could recover additional damages by way of motion under Rule 65 or would have to bring a separate action at law for malicious prosecution . . . ." *Id.* In any event, it would be premature for me to decide this legal issue, because it has not yet been determined whether NJTHA can establish that it sustained provable damages in excess of the $3.4 million bond amount during the period in which the TRO was in effect. Rather, as noted above, I will hold an evidentiary hearing to determine the amount of such damages. If, after the evidentiary hearing, NJTHA has established provable damages in excess of the $3.4 million bond amount, I will decide whether its novel claim for "bad faith" damages can be legally sustained. I further note that any such claim would appear to be equitable in nature and, therefore, would not require a jury trial.

[12] If NJTHA proceeds with its "bad faith" claim (or any other legally cognizable claim for abuse of process or malicious prosecution) in a separate action against Plaintiffs, I express no opinion as to the validity of any such claim, and I make no finding as to whether such a claim may be barred under any applicable legal defenses.

### III.     CONCLUSION

For the reasons set forth above, NJTHA's motion is **DENIED** to the extent that it seeks to recover damages sustained during the post-TRO period. I will hold an evidentiary hearing, pursuant to Fed. R. Civ. P. 65 and 65.1, to determine the amount of "provable damages" sustained by NJTHA during the period in which the TRO was in effect. I reserve judgment until after the evidentiary hearing on the amount of damages to be awarded on the bond for the 28-day TRO period, as well as on the issue of whether NJTHA can recover "bad faith" damages in excess of the bond amount for that period. An appropriate Order accompanies this Opinion.

DATED:  December 3, 2020

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
U.S. Chief District Judge